IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |  |
|---|---|---|
| KATHY REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 123-148 |
| | ) | |
| MICHAEL DANIEL HUCKO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Because Plaintiff is proceeding *pro se* and *in forma pauperis*, the First Amended Complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*).

**I.   FACTUAL BACKGROUND**

The Northern District of Georgia dismissed a majority of the named defendants from the First Amended Complaint at screening and transferred the case here. (See doc. nos. 3, 6-12.) This Court directed Plaintiff to file a second amended complaint, which she failed to do, so the First Amended Complaint is the operative pleading. (Doc. no. 18, p. 3); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016); Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("an amended complaint supersedes the initial complaint and becomes the operative pleading in the case").

Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

During the 2018-2019 school year, Plaintiff was employed as a teacher at the Academy of Richmond County High School ("ARHS") in Augusta, Georgia. (Doc. no. 8, p. 18.) In December 2018, school administrators transferred a female student, now named as a defendant in this case, out of Plaintiff's class without explanation. (Id. at 18-19.) Unbeknownst to Plaintiff at the time, the female student had filed a complaint against Plaintiff's son, who was also a student at ARHS, alleging the female student exposed her breasts to Plaintiff's son during a FaceTime call, and Plaintiff's son recorded and distributed the video to other students at ARHS. (Id. at 18-20.) Upon receipt of the complaint, Defendant Jason Medlin, Principal of ARHS, notified the Richmond County Sheriff's Office ("RCSO"), suspended Plaintiff's son from school, and "was involved and working with" RCSO against Plaintiff's son. (Id. at 8, 10-11, 20, 28.)

At an unspecified time, RCSO officers met with Plaintiff at the school and told her about the FaceTime incident. (Id. at 19-20.) An unidentified investigator accused Plaintiff's son of "exposing pornographic materials under Georgia Code of Law 16-12-80." (Id. at 19-20.) The officers stated the incident was subject to federal jurisdiction because the female student participated in the FaceTime call from her home at Fort Eisenhower. (Id. at 20-21.) Plaintiff asked the officers to leave, claiming it was an abuse of power to approach her at school concerning an event that did not occur at school. (Id. at 21.) When her teaching contract at ARHS ended in May 2019, Plaintiff accepted a teaching position in South Carolina. (Id. at 22.)

Following her meeting at ARHS with RSCO officers, Plaintiff filed a complaint against RCSO, alleging officials lacked evidence and improperly questioned her son. (Id. at 21-22.) In retaliation, RCSO arranged for issuance of an arrest warrant against her based on

a fabricated charge of felony identity fraud under O.C.G.A. § 16-9-121.  (Id. at 1-10, 22-25, 27-61.) The genesis of the false charge is a purported November 2020 phone call to RCSO by a person claiming to be Plaintiff's daughter, who reported to Defendant Deputy Cordero Foster that Plaintiff used her identity without permission in May 2019 to obtain electrical service from Georgia Power for an Augusta residence.  (Id. at 22, 59, 70-72.)  Defendant Patrick Dean Blanchard reviewed Deputy Cordero's report.  (Id. at 45, 71-72.)  Plaintiff alleges Deputy Foster violated Georgia law, the Sixth Amendment, and the Fourteenth Amendment by filing a police report based on accusations made only by telephone with no corroboration from Georgia Power.  (Id. at 22-23, 34, 42-43.)

Defendant Investigator Michael Hucko investigated the accusation, and Plaintiff alleges his investigation violated state guidelines, federal guidelines, and FTC regulations. (Id. at 34-40.)  She alleges Investigator Hucko illegally obtained a copy of the utility bills at issue, failed to establish where the crime occurred, and failed to report the crime to various state and federal agencies.  (Id.)  In December 2020, Investigator Hucko obtained a warrant for Plaintiff's arrest based on the crime of felony identity fraud, and his supporting affidavit provides in full as follows:

> Personally came Inv. Michael Hucko, who on oath says that to the best of his/her personal knowledge and belief, Kathy Jaunita Reaves did, on Dec 26, 2018 at approximately 12:00 AM in Richmond County, Georgia, commit the offense of:  IDENTITY FRAUD - Felony in violation of O.C.G.A. 16-9-121, a Felony under the laws of the state of Georgia, in that said accused on the above stated date and time, with intent to unlawfully appropriate the resources of another, did obtain identifying information of one Siobhan Reaves for the purpose of assisting the accused in accessing the resources of said person. The accused used the victim's name and social security number to obtain electric services from Georgia Power Inc. without authorization from the victim.  The offense occurred at 915 Flythe Drive, Apartment B in Augusta, Richmond County, Georgia.

3

(Id. at 75; see also id. at 23, 73-76.)  Plaintiff alleges the affidavit fails to allege facts sufficient to identify her as the perpetrator, and Defendant Zikiah Blackwell, Deputy Clerk, "did not have jurisdiction" to sign the warrant.  (Id. at 34, 53.)  On the same date the warrant issued, Defendant Officer Sutton entered the warrant into a database accessible by all state agencies nationwide.  (Id. at 46-49.)  Because the warrant lists Plaintiff's social security number and date of birth, Plaintiff alleges Principal Medlin and Defendant Cecil Clark, Human Resources Director for the Richmond County Board of Education, "conspired and gave [RCSO] plaintiff's personal information."  (Id. at 11.)

Plaintiff was unaware of the warrant until the Clarke County School District in Athens, Georgia, revoked an employment offer in July 2021.  (Id. at 22.)  The warrant disqualified her for other teaching jobs she sought in Georgia, South Carolina, and North Carolina.  (Id. at 23-25.)  Additionally, at an undisclosed time, the warrant caused Plaintiff to be "taken into custody, arrested and placed on HOLD . . . in jail for fourteen hours" by the South Carolina Highway Patrol.  (Id. at 7.)

In September 2021, counsel for RCSO contacted Plaintiff to discuss a matter from the criminal juvenile division.  (Id. at 24-25.)  Counsel denied that anyone from RCSO sent the warrant to any South Carolina agencies, and counsel provided Plaintiff a copy of the November 2020 police report concerning the accusation of identity fraud.  (Id.)  After Plaintiff filed an Open Records Act request, Officer Sutton informed Plaintiff the warrant was not intended to be distributed beyond Richmond County, and the police report had been "keyed as a warrant . . . to quote 'force'" Plaintiff to speak with RCSO.  (Id. at 14-15, 25.)

In September 2022, Defendant David Levert Kyler, Deputy Clerk for the Richmond County Magistrate Court, sent a certified copy of the arrest warrant to an attorney in South

4

Carolina, and South Carolina officials used this certified copy to block issuance of Plaintiff's South Carolina teacher certification. (Id. at 15-16.) Mr. Kyler lacked authority and jurisdiction to send the warrant, which was fraudulent, unenforceable, and invalid. (Id. at 15-16, 56-57.)

## II. DISCUSSION

### A. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. The complaint is insufficient if it

5

"offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff Fails to State a Claim Against Defendant Gemalto Thales

The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). While Plaintiff named Defendant Gemalto Thales in the caption of her original complaint, Plaintiff does not mention this defendant anywhere in her amended complaint. (See generally doc. nos. 1-1, 8.) Because the amended complaint supersedes are replaces the original complaint, and Plaintiff did not mention Defendant Thales in the amended complaint, dismissal of Defendant Thales is therefore appropriate. See Douglas, 535 F.3d at 1321-22; see also Hoefling, 811 F.3d at 1277; Lowery, 483 F.3d at 1219.

### C. Plaintiff Fails to State a Conspiracy Claim Against Any Defendant

Plaintiff's first and fourth claims allege a civil conspiracy by all defendants under 42 U.S.C. § 1983 to deprive her of her constitutional rights. (Doc. no. 8, pp. 27, 66.) To state a viable conspiracy claim, Plaintiff must make more than vague and conclusory allegations. See Twombly, 550 U.S. at 556-57; Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . . It is not enough to simply aver in the complaint that a conspiracy existed." (citations omitted)); Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*) ("The naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action." (citation omitted)). In addition to alleging Defendants acted under color of state law, Plaintiff must also plead: (1) Defendants came to an understanding or agreement to deprive Plaintiff of a constitutional right, and (2) the result of the conspiracy was "an actual denial" of a constitutional right. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1327 (11th Cir. 2015).

Plaintiff fails to state any facts connecting Defendants Richmond County, Scileppi-Pendleton, and Georgia Power/Southern Company to any element of the alleged conspiracy. (See generally doc. no. 8.) The First Amended Complaint fails to state a conspiracy claim against the remaining Defendants because it does not allege any communications between any of them that caused an understanding or agreement to be reached to deny Plaintiff any constitutional right. See Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992) (explaining "the linchpin for conspiracy is agreement, which presupposes communication").

Nor do the allegations rise above wild speculation and supposition. She attempts to cast two unrelated events—her son's FaceTime saga and the identity fraud investigation—into a vast conspiracy against her. But the only tie she makes between them is wild speculation that police and school officials were sufficiently outraged by the school events to trump up felony charges against her. The timeline is too attenuated, there is no suggestion her identity fraud accuser never existed, her mere filing of a complaint against RCSO would not reasonably result in such an outlandish scheme to create a criminal case out of whole cloth against her, and she merely guesses school officials played any role in the investigative and charging process. In addition, aside from speculative claims of a conspiracy, the majority of her allegations against RCSO merely describe the execution of normal job duties in connection with any criminal investigation such as documenting the initial accusation, investigating the accusation, swearing out a search warrant, publishing the warrant to state and federal law enforcement agencies, and confirming existence of the warrant upon request.

Such allegations are insufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555. Plaintiff thus fails to state a conspiracy claim upon which relief can be granted.

D. **Plaintiff Fails to State a Fair Credit Reporting Act Claim Against Any Defendant**

Plaintiff alleges "all defendants violated the Fair Credit Report [sic] Act with all this adverse information about her that clearly damaged her reputation and caused her to deny employment [sic]." (Doc. no. 8, p. 61.) FCRA provides a cause of action against consumer reporting agencies ("CRA") and "furnishers." Milgram v. Chase Bank USA, N.A., 72 F.4th 1212, 1217-18 (11th Cir. 2023). Because Plaintiff makes no allegation any damaging

information appeared on her credit report, she fails to state a claim under FRCA. Milgram, 72 F.4th at 1218; see also Felts, 893 F.3d at 1313.

### E. Plaintiff Fails to State a Due Process Claim Against Any Defendant

Plaintiff argues Defendants violated her Due Process rights under the Fourteenth Amendment by (1) engaging in a conspiracy between Defendants Medlin, Clark, and RCSO personnel regarding dissemination of Plaintiff's personal information, (2) acting without jurisdiction when Defendants Hucko and Blackwell investigated and sought a warrant for alleged identity fraud merely reported by phone, (3) interloping without authority when Defendant Kyler sent the warrant to a requesting party in South Carolina; and (4) failing to act when Defendant Georgia Power/Southern Company did not intervene. (Doc. no. 8, pp. 63-65.)  Plaintiff fails to state a claim against the remaining defendants by not making any Due Process allegations against them. See Douglas, 535 F.3d at 1321-22.

Plaintiff fails to state a claim against Georgia Power because it is a private actor, and Plaintiff pled no facts suggesting its actions should be considered action by the state. See Jackson v. Metro. Edison Co., 419 U.S. 345, 353-59 (1974) (finding utility company insufficiently connected with state to render company's actions those of state actor); Kengne v. Ga. Power Co., No. 122-CV-2297, 2022 WL 17492257, at *5 (N.D. Ga. Oct. 31, 2022) ("[E]ven though Georgia Power is an investor-owned electric utility company that is regulated by Georgia's Public Service Commission, it does not follow that Georgia Power is a state agency and therefore subject to the Fourteenth Amendment.").

Plaintiff fails to state a claim against Defendants Medlin and Clark based on pure speculation they provided RCSO personnel Plaintiff's social security number and date of birth, and against RCSO personnel for including Plaintiff's personal information on the warrant.

Plaintiff "do[es] not cite, and the Court does not find, any authority from which it can conclude that [Defendants'] alleged access and dissemination of [Plaintiff]'s social security number . . . would violate [Plaintiff]'s right to privacy under the substantive due process clause of the Fourteenth Amendment." Johansson v. Emmons, No. 609-CV-2053, 2010 WL 457335, at *6 (M.D. Fla. Feb. 4, 2010).

Plaintiff fails to state a claim against Defendants Hucko and Blackwell based on the allegation RCSO personnel "did not have jurisdiction to act." Plaintiff repeatedly asserts a felony under O.C.G.A. § 16-9-121 should not have been reported by phone, and RCSO personnel should have required the reporting party to appear in-person to report the alleged identity fraud before a police report could be filed. (See doc. no. 8, pp. 33-34, 43, 45.) However, Plaintiff cites no relevant law for such a proposition, and O.C.G.A. § 16-9-121 merely establishes the elements of the offense of identity fraud, not the appropriate mechanisms for reporting such a crime. See Ga. Code Ann. § 16-9-121 (2022). Where Georgia law does contemplate a potential victim's reporting of identity fraud, the relevant statute states only, "[a] person who has learned or reasonably believes that he or she has been the victim of identity fraud may contact the local law enforcement agency with jurisdiction over his or her actual residence for the purpose of making an incident report." Ga. Code Ann. § 16-9-125.1(a) (2022). The statute does not require reporting to occur in person. Therefore, Plaintiff fails to establish her Due Process rights were arguably violated when RCSO personnel generated a police report and began investigating a potential crime reported by phone.

Second, Plaintiff claims RCSO personnel did not have territorial jurisdiction over the investigation, as they never "established where the actual crime of identity [fraud] took place," and the "jurisdiction of Richmond County is just where the power and utility services were

10

provided." (Doc. no. 8, p. 38.)  Georgia law again contradicts this argument, as it establishes that victims should report identity fraud to the "local law enforcement agency with jurisdiction over his or her actual residence." Ga. Code Ann. § 16-9-125.1(a) (2022).  Plaintiff points to no authority establishing it would be improper for a local law enforcement agency to investigate a report of identity fraud relating to the utilities provided to a home in that agency's jurisdiction. She thus fails to state a Due Process claim as to the territorial jurisdiction of the RCSO identity fraud investigation.

Plaintiff further alleges Defendant Hucko's investigation was legally deficient for various reasons, and the Court liberally construes these grievances as asserting Defendant Hucko violated Plaintiff's rights to procedural Due Process by conducting a legally improper investigation of her, which resulted in deprivations of liberty and property.  Plaintiff's primary grievance is that Investigator Hucko did not report the alleged crime of identity theft to other state and federal agencies and instead investigated it himself.  Plaintiff is correct that various agencies share responsibility for investigating identity fraud, and there are channels through which reports should be directed by local law enforcement.  See, e.g., Ga. Code Ann. § 35-1-13 (2023) ("[A]ny law enforcement agency that receives a report from a resident of this state that such person has been the victim of identity fraud shall prepare an incident report and transmit the same to the Georgia Bureau of Investigation identity fraud repository.")  However, although Georgia law vests authority in the Attorney General and other state agencies to investigate complaints of identity fraud, that authority is not exclusive.  For example, the relevant provision vesting authority in the Attorney General concludes:  "Nothing in this Code section shall be construed to preclude any otherwise authorized law enforcement or prosecutorial agencies from conducting investigations and prosecuting offenses of identity fraud."  Ga. Code Ann. § 16-9-

11

123 (2015). Thus, it was proper for RCSO personnel to investigate the report they received of identity fraud, and Plaintiff's Due Process rights were not violated as a result.

Moreover, Defendant Blackwell is entitled to judicial immunity to the extent Plaintiff asserts a Due Process claim against her. It is well-settled that judicial officers are entitled to absolute immunity for "actions taken . . . within the legitimate scope of judicial authority." Rehberg v. Paulk, 566 U.S. 356, 363 (2012); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). Thus, the Court must determine whether Defendant Blackwell was acting in a judicial capacity and whether the conduct alleged clearly fell outside her subject matter jurisdiction when issuing the arrest warrant. See Stump, 435 U.S. at 359-64. Although Plaintiff claims Defendant Blackwell "did not have jurisdiction to act," (doc. no. 8, p. 53), this Court has previously determined Deputy Clerks of the Richmond County Civil Court, such as Defendant Blackwell, are authorized to issue criminal arrest warrants:

> The Georgia General Assembly's local legislation authorizes clerks and deputy clerks of the Civil Court of Richmond County the authority to issue search warrants:
>
>> The clerk and deputy clerks of said Civil Court shall have complete power and authority, co-existent and coordinate with the power of the judges of said court, under the provisions of this Act, to issue any and all warrants, civil and criminal . . . which under the laws of this State are performable by a justice of the peace.
>
> 1974 Ga. Laws 2410, at 2417, § 12. The Georgia Legislature revised section 2 of 1974 Ga. Laws 2410 to state:
>
>> The Clerk and each deputy clerk of the Civil Court of Richmond County shall continue to exercise the power and authority, under

> the immediate supervision of the chief judge or the presiding judge of said court, to issue warrants for the arrest of persons charged with the commission of crimes committed in Richmond County, to the same extent as these clerks and deputy clerks have heretofore been authorized to act.
>
> 1984 Ga. Laws 4467, at 4471, § 2(b). Nothing in 1984 Ga. Laws 4467, however, strikes section 12 of 1974 Ga. Laws 2410.

Lamb v. Roundtree, No. CV 119-030, 2020 WL 2563043, at *5 (S.D. Ga. May 20, 2020) (Hall, C.J.). Thus, Defendant Blackwell acted within the legitimate scope of judicial authority when issuing the arrest warrant and is entitled to judicial immunity for her actions.

Plaintiff also fails to state a claim against Defendant Kyler, the Deputy Clerk who certified the arrest warrant and sent it to a requesting party in South Carolina. Based on handwritten annotations Plaintiff added to the certification signed by Defendant Kyler, her Due Process claim against Defendant Kyler is that, as a Deputy Clerk of the *Civil* Court of Richmond County, Defendant Kyler lacked jurisdiction to transmit a *criminal* arrest warrant. (See doc. no. 8, p. 84; see also id. at 16, 56-57, 65.) Such a claim fails in light of the above discussion, as the Civil Court has clearly designated authority over both civil and criminal warrants. As such, Plaintiff fails to state a Due Process claim against Defendant Kyler.

    **F.**    **Plaintiff Fails to State a Sixth Amendment Claim Against Any Defendant**

Although not listed in her numbered "cause[s] of action," (doc. no. 8, pp. 27-66), Plaintiff alleges her Sixth Amendment rights were violated throughout RCSO's investigation of the identity theft allegation because the alleged victim was not required to report the crime in-person, and because Defendant Hucko did not inform Plaintiff the allegation was being investigated prior to issuance of an arrest warrant. (See id. at 13-14, 17, 34, 37-38, 42-43, 45, 64.) The plain language of the Sixth Amendment demonstrates Plaintiff has failed to state a claim that her Sixth

Amendment rights were violated: "In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const., amend. VI (emphasis added). The Sixth Amendment right to confront witnesses—not any accuser, as Plaintiff implies—applies in criminal prosecutions, not law enforcement investigations. Id.; see also United States v. Ahmed, 73 F.4th 1363, 1376 (11th Cir. 2023) ("A defendant's Sixth Amendment right to confront witnesses ordinarily applies during the government's case-in-chief.").

## G. Any Potential State Law Claims Should Be Dismissed.

To the extent Plaintiff may have any viable state law tort claims regarding the events alleged in her amended complaint, those should be dismissed so that Plaintiff may pursue them in state court. 28 U.S.C. § 1331, which states that District Courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States," provides the Court authority to rule in a § 1983 case. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3) (emphasis added).

Indeed, a District Court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. See Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) (directing dismissal of state law claims when case "retains no independent basis for federal jurisdiction"); see also Republic of Panama v. BCCI Holdings

14

(Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."). Accordingly, any potential state law claims Plaintiff believes she may have should be dismissed so that he may, if she chooses, pursue them in state court.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** this case be **DISMISSED** for failure to state a claim and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of February, 2024, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA